FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 2 6 2014

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

-ODE

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | 1:14 - M I - 0 0 1 7 Case No. _____(N.D. Ga.) |
| This document relates to: | |
| *Island Partners, et al. v. Deloitte & Touche LLP* (05-CV-2770) | 03-MDL-1529-JMF (S.D.N.Y.) and |
| JAMES RIGAS, JOHN RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P., Plaintiffs, v. DELOITTE & TOUCHE, LLP, Defendant. | 05-CV-2770-JMF (S.D.N.Y.) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS

The Court should quash the subpoenas served by Plaintiffs James Rigas, John Rigas, Zito I, L.P., and Zito Media, L.P. ("Plaintiffs") on movants Wallace Haislip and John Wharton, who are third parties to the captioned case. Despite the lengthy fact discovery period afforded to Plaintiffs, which began in May 2013 and was already extended by the court at Plaintiffs' request to March 7, 2014, Plaintiffs failed to seek any discovery from Mr. Haislip or Mr. Wharton until the very tail

end of the discovery period, issuing subpoenas to them on February 20 and February 21, respectively. Because Plaintiffs delayed so long in seeking any discovery from Mr. Haislip or Mr. Wharton, Plaintiffs now seek to impose substantial burden on them, demanding to take their depositions as to 14-year-old facts on very short notice, so as to fit the depositions within the limited remaining discovery period.

There is no basis or need for these last-minute depositions, and they are unduly harassing and burdensome, not only because of the timing, but also because neither Mr. Haislip nor Mr. Wharton has any personal knowledge that is relevant to the issues in the litigation. This case is a dispute between Plaintiffs and their accountants at Deloitte & Touche, LLP ("Deloitte"), who Plaintiffs claim provided them faulty accounting-related advice and breached contracts with them and duties owed to them regarding the provision of accounting-related services. Mr. Haislip and Mr. Wharton have no first-hand information about anything relevant to those claims, including what Deloitte was charged with doing for Plaintiffs, what information Deloitte had when working for Plaintiffs, what advice or services Deloitte provided Plaintiffs, or whether that advise met Deloitte's professional and legal responsibilities.

Plaintiffs' counsel has advised that Plaintiffs intend to use the depositions of Mr. Haislip and Mr. Wharton to try to establish that a marketing support agreement ("MSA") that they say Deloitte approved – which was entered into in 2000 between now-defunct Adelphia Communications Corporation ("Adelphia") (which some of the Rigas Plaintiffs owned and managed) and Scientific-Atlanta, Inc. ("Scientific-Atlanta") (Mr. Haislip and Mr. Wharton's former employer) – was not fraudulent per se, or intended as a means for committing fraud.  But Mr. Haislip and Mr. Wharton cannot testify as to whether Adelphia or Plaintiffs intended to commit fraud through the agreement, or use the agreement to commit fraud. (Indeed, the U.S. Attorney's Office for the Southern District of New York and the Securities and Exchange Commission alleged in 2002 that Adelphia and the Rigases *did* intend to commit accounting-related fraud through the agreement.)  All Mr. Haislip and Mr. Wharton could testify to is that *they* did not intend to commit any fraud through the agreement – but their state of mind is entirely irrelevant to the claims in this case and does not show one way or the other whether Plaintiffs or Adelphia intended to use the agreement, or actually used the agreement, to commit fraud.

In addition, to the extent that any facts relating to the 2000 MSA between Adelphia and Scientific-Atlanta possibly could be relevant, Plaintiffs already have

documents relating to the MSA that Scientific-Atlanta produced in connection with adversary proceedings in the Adelphia bankruptcy, and previously deposed Mr. Wharton in that prior litigation on the same issues as to which they propose to have him testify here. Forcing Mr. Haislip and Mr. Wharton to provide further discovery on these 14-year-old issues at this point is unnecessarily harassing of third parties.

Finally, as detailed below, there is information suggesting Plaintiffs are improperly pursuing testimony from Mr. Wharton and Mr. Haislip for use in John Rigas' and Timothy Rigas' separate *habeas* proceedings against the United States government. Accordingly, the deposition subpoenas impose an undue and improper burden and represent an abuse of the discovery process, and the Court should order the subpoenas quashed.

## I.     Background

### A.     The Collapse of Adelphia and the Underlying Litigation

Plaintiffs in the underlying litigation are John and James Rigas, former owners and executives of now-defunct cable provider Adelphia, and various successors in interest to other entities previously controlled by the Rigas family. Adelphia collapsed in 2002 amidst allegations that its top executives, including named Plaintiff John Rigas, committed massive fraud and other wrongdoing. The

4

allegations of wrongdoing and collapse of the company spawned various criminal and civil proceedings, including the criminal prosecution and conviction of Plaintiff John Rigas and his son, Timothy Rigas, for federal crimes including conspiracy, securities fraud, and bank fraud.   (*See* Ex. 1, First Amended Complaint, ¶¶ 145-54.)

Many of the resulting civil actions were filed in federal court and consolidated under the multi-district proceedings captioned *In re Adelphia Communications Corporation Securities and Derivative Litigation*, 03-MDL-1529 (S.D.N.Y.).   Most of those cases have long since been dismissed, settled, or otherwise disposed of, but the underlying action – *Rigas, et al. v. Deloitte*, 05 CV 2770 (S.D.N.Y.) – became part of the *In re Adelphia* MDL and remains active. Plaintiffs have sued Adelphia's former auditors, Deloitte, asserting various claims regarding what Plaintiffs allege was deficient advice and accounting/audit work that Deloitte allegedly provided them and/or Adelphia and that they claim contributed to Adelphia's downfall and their legal problems. (*See generally* Ex. 1.)

Specifically, Plaintiffs allege that Deloitte provided accounting advice and auditing services to the Rigases and Adelphia over the years, including approving of Adelphia's accounting methods as compliant with relevant rules and regulations. (*Id.* ¶¶ 1-5, 15-21.) Plaintiffs allege that Deloitte reviewed and approved of how

5

Adelphia accounted for and disclosed various transactions that government authorities later determined to be fraudulent, including in particular certain "co-borrowing agreements" and related party transactions among Adelphia, the Rigases, and various entities controlled by the Rigases. (*Id.* ¶¶ 56-105.) Plaintiffs claim that in 2002, Adelphia publicly disclosed the co-borrowing agreements, attracting the attention of the SEC (*id.* ¶¶ 112-29), and that due to scrutiny related to that disclosure, Deloitte distanced itself from Adelphia and refused to provide an audit opinion for Adelphia's 2001 financial statements, such that Adelphia could not satisfy SEC filing requirements, causing the company to collapse. (*Id.* ¶¶ 130-44.) Plaintiffs further claim Deloitte misled and failed to properly advise them regarding proper accounting and disclosure of the co-borrowing agreements and related party transactions and unjustifiably abandoned them when controversy arose concerning those transactions. (*Id.* ¶¶ 191-238.)

Based on these allegations, Plaintiffs initially asserted claims against Deloitte for breach of contract, breach of professional duty, negligent misrepresentation, tortious interference, breach of fiduciary duty, and contribution and indemnity. On December 27, 2013, Judge Susan Furman granted Deloitte's motion to dismiss Plaintiffs' breach of contract, breach of fiduciary duty, tortious interference, and indemnity and contribution claims, while permitting Plaintiffs to

proceed as to their breach of professional duty and negligent misrepresentation claims, which concern whether Deloitte misrepresented that it would provide an audit opinion as to Adelphia's 2001 financial statements or gave proper advice to Plaintiffs concerning the co-borrowing agreements and related party transactions, and whether Deloitte met its professional duties to Plaintiffs in connection with those transactions. *See In re Adelphia Comms. Corp. Sec. and Deriv. Litig.*, No. 03 MDL 1529, 2013 WL 6838899 (S.D.N.Y. Dec. 27. 2013).

Following the ruling on the motion to dismiss, the facts and issues relevant in this litigation relate to: the work Deloitte was asked to perform for Plaintiffs and the issues on which Plaintiffs sought Deloitte's advice, including specifically as to the co-borrowing agreements and related party transactions; the information Deloitte had on those matters when performing its work, including communications and interactions between Plaintiffs and Deloitte; and the advice Deloitte gave Plaintiffs and the work performed for Plaintiffs concerning those matters.

### B.   Scientific-Atlanta and Plaintiffs' Subpoenas to Mr. Haislip and Mr. Wharton

Prior to its demise, Adelphia was a customer of Scientific-Atlanta, a manufacturer of cable television, telecommunications, and broadband products that is based in Lawrenceville, Georgia.  In 2006, Scientific-Atlanta was acquired by

7

Cisco Systems, Inc. ("Cisco").  Mr. Haislip was formerly the chief financial officer of Scientific-Atlanta, but he retired in 2007.  Mr. Wharton was formerly a senior director of finance at Scientific-Atlanta, but he likewise is no longer employed by the company (which is now part of Cisco).

Plaintiffs' complaint mentions in passing – in a subsection comprising five out of 272 numbered paragraphs in the complaint (*id.* ¶¶ 106-10) – that, in 2000, Adelphia and Scientific-Atlanta entered into an MSA.  Plaintiffs allege that, as part of its work for them and Adelphia, Deloitte signed off on the propriety of the MSA. (*Id.* ¶¶ 109-10.)   But Plaintiffs do not claim that Scientific-Atlanta, Mr. Haislip, or Mr. Wharton had any involvement in or personal knowledge of the Rigases' and Adelphia's dealings with Deloitte with respect to the MSA.  Nor do Plaintiffs allege that Mr. Haislip or Mr. Wharton had any involvement in or personal knowledge of the co-borrowing agreements or any related party transactions, or whether and to what extent Deloitte approved of how Adelphia accounted for the MSA, the co-borrowing agreements or related party transactions.

Likewise, Plaintiffs do not allege (nor could they) that Mr. Haislip or Mr. Wharton were involved in, or have any first-hand knowledge of, any discussions or interactions between Plaintiffs, Adelphia, and Deloitte on issues relating to work Deloitte allegedly performed for, and advice Deloitte allegedly

provided, to Plaintiffs or Adelphia.  Indeed, Mr. Haislip and Mr. Wharton were simply employees of a company that sold products to Adelphia, and did not participate in any accounting-related discussions and decisions between Deloitte and either Adelphia or the Rigases.

Plaintiffs nevertheless have now subpoenaed Mr. Haislip and Mr. Wharton for deposition testimony.[1]   Despite the fact that discovery commenced on May 7, 2013, Plaintiffs did not seek testimony from Mr. Haislip or Mr. Wharton for the first nine and a half months of the ten-month discovery period.  Discovery was initially due to close on February 7, 2014 and was recently extended, at Plaintiffs' request, to March 7, 2014.  Plaintiffs did not issue subpoenas for Mr. Haislip and Mr. Wharton until February 20 and 21.  They sought to take their depositions on 14-year-old facts on essentially an emergency basis (within one week), so as to meet the March 7 discovery deadline – a time crisis that Plaintiffs wholly created for no reason and then attempted to foist on third parties.

## C.    Plaintiffs' Prior Discovery on Scientific-Atlanta and Mr. Wharton

Counsel to the Rigases already has obtained extensive discovery from Scientific-Atlanta concerning the 2000 MSA between Scientific-Atlanta and Adelphia.  Specifically, in proceedings brought by the Adelphia bankruptcy trustee

---

[1] The initial subpoenas, which were issued on February 20 and February 21 and sought testimony from Mr. Haislip and Mr. Wharton in Atlanta on February 27, are attached as Exhibits 2 and 3.

to which both Deloitte and the Rigases were party, *Adelphia Comms. Corp. v. Deloitte & Touche, LLP v. Rigas et al.*, Civ. No. 000598 (Pa. Ct. C.P.), Scientific-Atlanta produced approximately 27,000 pages of information related to its dealings with Adelphia and the 2000 MSA. And on December 22, 2005, Mr. Wharton sat for nearly an entire day of testimony devoted almost exclusively to the MSA. The Rigases' present counsel from Dilworth Paxson LLP was present at the deposition and questioned Wharton at length concerning his interactions with Adelphia concerning the MSA.

### D. Plaintiffs' Pursuit of Other Witnesses and the Rigases' *Habeas* Proceedings

Evidently, Plaintiffs are pursuing testimony against various other third-parties of dubious relevance to the underlying litigation in other parts of the country. At least one other individual has filed a motion to quash, and in the motion raised the possibility that the Rigases are improperly leveraging their litigation against Deloitte to seek discovery for use in the Rigases' currently pending *habeas* proceedings, including specifically attempting to discover information relating to meetings with prosecutors that the prosecutors might have failed to disclose to the Rigases, so as to argue a *Brady* violation. (*See* Ex. 4, Brief in Support of Motion to Quash or Modify Subpoena, No. 14-49 (W.D. Pa. Feb. 21, 2014).) And indeed, before subpoenaing Mr. Haislip and Mr. Wharton, Plaintiffs

had issued a third-party document subpoena on Cisco and, through that subpoena, specifically requested minutes or notes related to Scientific-Atlanta's meetings with prosecutors concerning the marketing support agreements – information that has no conceivable relevance to Plaintiffs' claims against Deloitte, but that Plaintiffs possibly might try to use to further support their request for *habeas* relief. (*See* Ex. 5, Plaintiffs' 9/23/13 subpoena on Cisco, ¶ 7.)

## II.    Argument

Rule 45(d)(3) directs courts to quash or modify a subpoena if its enforcement would "subject a person to undue burden." Fed. R. Civ. P. 45(d)(3). Courts recognize that "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Aeritas, LLC v. Delta Airlines, Inc.*, No. 1:13-cv-00346, 2013 WL 454452, at *2 (N.D. Ga. Feb. 7, 2013). Whether to quash a third-party subpoena invites consideration of Rule 26(b)(2), which provides that a person may seek to limit discovery when it is duplicative or obtainable from a more convenient source; when the party seeking discovery already had opportunity to obtain the discovery; or when the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2). *See Bahrami v. Maxie Price Chevrolet-Oldsmobile Inc.*, No. 1:11-cv-4483, 2013 WL 3800336, at *3 (N.D. Ga. June 19, 2013). Factors pertinent to this

analysis include the relevance of the information requested and the requesting party's need for that information. *See Southeastern Mech. Serv., Inc. v. Brody*, No. 1:09-cv-0086, 2009 WL 3095642, at *3 (N.D. Ga. June 22, 2009).

A subpoena should be quashed if, as here, the proposed deponent lacks knowledge relevant to the facts at issue in the litigation. *See, e.g.*, *Gulley v. Lapaglia*, No. 12cv371, 2013 WL 6713365, at *2 (E.D. Tenn. Dec. 19, 2013) (quashing deposition subpoena issued to nonparty deponent who demonstrated he had no personal knowledge of his employer's policies, which were the subject of the litigation); *In re Yellowstone Mountain Club, LLC*, No. 08-61570-11, 2012 WL 845458, *2 (Bankr. Mont. Mar. 12, 2012) (quashing deposition subpoena because nonparty's testimony was not relevant to and would not assist litigation); *Jones v. Hirschfeld*, 219 F.R.D. 71, 77 (S.D.N.Y. 2003) (quashing deposition subpoena because no scenario existed where knowledge held by deponent could be relevant to the underlying litigation).

As set forth below, applying these principles, the subpoenas to Mr. Haislip and Mr. Wharton should be quashed.

## A.    Mr. Haislip and Mr. Wharton Lack Relevant Knowledge

The facts and issues relevant in this litigation concern the issues on which Plaintiffs allegedly sought Deloitte's advice; the information Deloitte had on those

issues, including communications and interactions between Plaintiffs and Deloitte; and any advice and services Deloitte provided or promised to provide Plaintiffs concerning those issues.  As former employees of Scientific-Atlanta, rather than Adelphia or Deloitte, neither Mr. Haislip nor Mr. Wharton was privy to the facts relevant to these issues.  In particular, Mr. Haislip and Mr. Wharton lack first-hand knowledge of the extent to which Deloitte was informed of relevant facts regarding, or approved of, Adelphia's accounting for the co-borrowing agreements, any related party transactions, or the MSA, or whether Deloitte promised it would provide an audit opinion for Adelphia's 2001 financial statements.

Plaintiffs' counsel has not suggested that Mr. Haislip or Mr. Wharton has any relevant knowledge on the above-described issues, or that their depositions would be taken to attempt to develop any such information.  Instead, they have indicated that their intent is to use the depositions of Mr. Haislip and Mr. Wharton for the purpose of trying to show that the 2000 MSA was not fraudulent per se, or intended as a means for committing fraud.

Mr. Haislip and Mr. Wharton, however, cannot testify as to whether Adelphia or Plaintiffs intended to use the MSA to commit fraud, or whether they actually did use the agreement in that fashion.  While Mr. Haislip and Mr. Wharton could testify that about *their* state of mind with respect to the MSA – i.e., that *they*

13

did not intend to commit any fraud through the agreement, or have Scientific-Atlanta use the agreement for any fraudulent or improper purpose. But testimony that they and Scientific-Atlanta did not intend to commit a fraud, or actually commit a fraud, is entirely irrelevant to any issue in this case. Such testimony does not show, for example, whether Plaintiffs or Adelphia intended to use the MSA to commit a fraud, or actually did so.

Testimony from Mr. Haislip and Mr. Wharton would simply have no bearing on whether Plaintiffs used the MSA to commit a fraud, including by causing Adelphia to improperly account for the MSA and the payments received thereunder. As important, their testimony would not be relevant to Deloitte's understanding of the MSA, how Deloitte understood Plaintiffs accounted for the MSA, whether Deloitte approved that accounting, whether Deloitte failed to acknowledge its approval of those methods when Adelphia came under scrutiny upon disclosing the co-borrowing agreements, or any other potential issue in this case. On those and all other potentially relevant issues, Mr. Haislip and Mr. Wharton simply have no ability to provide relevant testimony.

Further, both Mr. Haislip or Mr. Wharton are now well removed not only from Scientific-Atlanta's dealings with Adelphia, which terminated more than a decade ago, but also from Scientific-Atlanta itself. Indeed, Mr. Haislip, in

14

particular, retired many years ago.   He could not be expected to contribute meaningfully to the testimony of witnesses from Deloitte and Adelphia who actually participated in the relevant events and have relevant knowledge concerning interactions between Adelphia and Deloitte.

### B.   Plaintiffs Have Already Obtained All Potentially Relevant Information

As noted above, to the extent Plaintiffs seek relevant information concerning the 2000 MSA, Plaintiffs already have that information from prior proceedings. Scientific-Atlanta produced 27,000 pages of information concerning the MSA, including documents and correspondence generated contemporaneously to the relevant events.  Further, in 2005, Plaintiffs deposed Mr. Wharton extensively with regard to the interactions between Adelphia and Scientific-Atlanta as to the MSA.

Mr. Haislip's and Mr. Wharton's recollections of events 12-14 years ago are surely less meaningful and probative at this point in time than the 27,000 pages of documentary evidence already in Plaintiffs' possession, as well as the testimony Plaintiffs previously obtained from Mr. Wharton much closer to Adelphia's collapse, such that the burden associated with the requested testimony far outweighs its likely benefit. *See Misc. Docket Matter #1*, 197 F.3d 922, 927 (8th Cir. 1999) (court should weigh burden imposed against likely benefit of discovery); *cf. Alexander v. F.B.I.*, 192 F.R.D. 25 (D.D.C. 2000) (refusing to

compel a witness to submit to a deposition where the witness had already been deposed and answered the plaintiffs' questions and the discovery sought by the plaintiffs was duplicative).

### C. Plaintiffs Appear to be Pursuing Testimony From Mr. Haislip and Mr. Wharton for an Improper Purpose

Finally, there is reason to believe Plaintiffs are pursuing Mr. Haislip's and Mr. Wharton's testimony not for use in their litigation against Deloitte, but for use in the Rigases' *habeas* proceedings. Plaintiffs apparently have pursued from another third-party witness (*see* Ex. 4), and have also requested from Cisco (*see* Ex. 5), information related to dealings with prosecutors from after the Adelphia fraud came to light, although such information has no bearing on Plaintiffs' prior dealings with Deloitte or any other issue in this case. Particularly because Mr. Haislip and Mr. Wharton have no personal knowledge relevant to the issues in this litigation, there is cause for concern that Plaintiffs have issued the subpoenas on Mr. Haislip and Mr. Wharton for the improper purpose of conducting discovery not permitted in their *habeas* proceedings, including by questioning Mr. Haislip and Mr. Wharton as to meetings with the government or other irrelevant matters.

### III. Conclusion

For the foregoing reasons, the deposition subpoenas to Mr. Haislip and Mr. Wharton should be quashed.

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing

Memorandum of Law in Support of Motion to Quash Subpoenas has been prepared

in Times New Roman 14, a font and type selection approved by the Court in L.R.

5.1(B).

Dated: February 26, 2014          Respectfully submitted,

Oscar N. Persons
Georgia Bar No. 573500
STRICKLAND BROCKINGTON LEWIS LLP
Midtown Proscenium Suite 2200
1170 Peachtree Street NE
Atlanta, GA 30309-7200
Telephone: (678) 347-2200
Facsimile:  (678) 347-2210
Email: oscar.persons@sbllaw.com

Robert L. Michels
Pro Hac Vice Application Pending
Joseph L. Motto
Pro Hac Vice Application Pending
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Facsimile: (312) 558-5700
rmichels@winston.com
jmotto@winston.com
*Attorneys for Wallace Haislip
and John Wharton*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | |
| This document relates to: | Case No. _____(N.D. Ga.) |
| *Island Partners, et al. v. Deloitte & Touche LLP* (05-CV-2770) | 03-MDL-1529-JMF (S.D.N.Y.) |
| | and |
| JAMES RIGAS, JOHN RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P., <br>       Plaintiffs, <br><br>       v. <br> DELOITTE & TOUCHE, LLP, <br>       Defendant. | 05-CV-2770-JMF (S.D.N.Y.) |

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on February 26, 2014, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS** to be served via U.S. Mail upon the following:

Michael P. Gallagher
DILWORTH PAXON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7154

18

Fax: (215) 575-7200
mgallagher@dilworthlaw.com

*Counsel for James Rigas et al.*

James E. Canning
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave.
New York, NY 10019-7475
Tel: (212) 474-1070
Fax:  (212) 474-3700
JCanning@cravath.com

*Counsel for Deloitte & Touche LLP*

By: _____
Oscar N. Persons
Georgia Bar No. 573500

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | |
| | Case No. _____ (N.D. Ga.) |
| This document relates to: | 03-MDL-1529-JMF (S.D.N.Y.) |
| *Island Partners, et al. v. Deloitte & Touche LLP* (05-CV-2770) | and |
| | 05-CV-2770-JMF (S.D.N.Y.) |
| JAMES RIGAS, JOHN RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P., Plaintiffs, | |
| v. DELOITTE & TOUCHE, LLP, Defendant. | |

## ORDER

AND NOW, this ___ day of _____, 2014, upon consideration of the Motion to Quash Subpoenas, and all submissions and arguments of the parties, it is hereby ORDERED:

1. The Motion to Quash Subpoenas is GRANTED.

2. The subpoenas served upon Wallace Haislip and John Wharton by counsel for James Rigas, et al. are hereby QUASHED in their entirety.

DATE: _____, 2014                    ORDERED:


                                          _____
                                          United States District Judge

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| IN RE ADELPHIA COMMUNICATIONS CORPORATION SECURITIES AND DERIVATIVE LITIGATION | |
| This document relates to: | Case No. _____ (N.D. Ga.) |
| *Island Partners, et al. v. Deloitte & Touche LLP* (05-CV-2770) | 03-MDL-1529-JMF (S.D.N.Y.) and |
| JAMES RIGAS, JOHN RIGAS, ZITO I, L.P., and ZITO MEDIA, L.P., Plaintiffs, v. DELOITTE & TOUCHE, LLP, Defendant. | 05-CV-2770-JMF (S.D.N.Y.) |

## EXHIBIT INDEX TO MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS

Exhibit 1:   First Amended Complaint

Exhibit 2:   February 20, 2014 Subpoena to Wallace Haislip

Exhibit 3:   February 21, 2014 Subpoena to John Wharton

Exhibit 4:   Brief in Support of Motion to Quash or Modify Subpoena, No. 14-49 (W.D. Pa. Feb. 21, 2014)

Exhibit 5:   September 23, 2013 Subpoena to Cisco Systems, Inc.